# CHARLESTOWN.

## FISHER'S HEIRS *v.* CAMP'S HEIRS.

Submitted June 24, 1885.—Decided September 26, 1885.

1. In a real action, if the defendants plead not guilty, they may afterwards abandon their defence and by leave of the court withdraw the plea of not guilty and put in a plea of disclaimer, or they may disclaim by a simple entry of record in the case all interest in or title to the land in controversy. But if only one of the defendants wishes to abandon the controversy, the court should not permit the withdrawal of the plea of not guilty, but the defendant desiring to abandon the controversy should be allowed to do so by such simple entry of disclaimer on the record-book ; and there should be no judgment for costs subsequently incurred against him. (p. 580.)

2. When a new trial has not been asked in the court below by the plaintiff in error, the appellate court will review none of the opinions or rulings of the court below during the trial of the case before the jury, though such opinions and rulings be made a part of the record by formal bills of exceptions or otherwise. (p. 580.)

GREEN, JUDGE, furnishes the following saatement of the case:

On May 18, 1847, George Fisher, jr., instituted his writ of right in the superior court of law and chancery for Lewis county, then in Virginia, against James M. Camp, to recover a tract of 200 acres of land in said county. The demandant filed his account October 4, 1847, and the tenant then filed his plea, and the demandant filed his replication thereto, and thereupon the *mise* was joined between the parties. The tenant, James M. Camp, having died, the action was on September 29, 1849, revived against his heirs. And the demandant having afterward died, the action was on May 17, 1862, ordered by the court to proceed in the name of his heirs. On September 7, 1874, one of these heirs having died, the action was ordered to be proceeded with in the name of his heirs in lieu of their ancestor. Two of the seven heirs of tenant, James M. Camp, the record states, on March 11, 1875, appeared and disclaimed any interest in the land in controversy. No formal disclaimer was filed by them, but a simple entry was made on the record, as above stated. Others of the heirs of the demandant having died, the action was revived in the names of the heirs in lieu of their deceased ancestors. A survey of the land was made by order of the court during the progress of the action.

On March 6, 1877, a jury was sworn to say the truth, whether James M. Camp's heirs have more right to hold the tenement, which George Fisher's heirs demand against them by their writ of right, or George Fisher's heirs have the more right to have it, as they demand, and a true verdict give according to the evidence. During the trial of the case by the jury, after the demandants had concluded their evidence, and the tenants had given some evidence before the jury on the *mise* joined, the tenants showed the fact, that certain of the demandants were infants, and thereupon they moved the court to arrest further proceedings in the action on that ac-

73

count, and thereupon the demandants moved the court to allow them to introduce George Fisher to the stand as next friend for these infants and to prosecute this action for them. As stated on the record, it not appearing to the court that any parties would be surprised or prejudiced by so doing, it was ordered that George Fisher be introduced into this action in the character of next friend to these infants. To this the tenants objected, but their objection was overruled. On March 8, 1877, the jury rendered their verdict finding that the demandants have more right to have the tenement, which they demand against the tenants, than the tenants have to hold the same, and assessing the demandant's damages at one cent. Thereupon it was considered by the court, that the demandants recover against the tenants their seizin of said tenement containing 200 acres, giving its boundaries, to hold to the said demandants and their heirs quit of said tenants and their heirs forever; and the court rendered judgment for the demandants for their one cent damages and their costs against the tenants or defendants; and a writ was granted them to have their seizin.

During the trial of the issue before the jury, the record shows, the tenants excepted to certain rulings and opinions of the court and took a bill of exceptions. This bill of exceptions shows, that the tenants offered in evidence certain deeds, whereby certain of the demandants after the institution of this action and since 1862 had conveyed their undivided interest in the 200 acres of land in controversy to certain others of the demandants. The demandants objected to these deeds being read to the jury as evidence in this action, and the court sustained their objection and refused to allow any of these deeds to be read to the jury. To this action of the court the tenants excepted, and a formal bill of exceptions was taken and made a part of the record.

To this judgment of the circuit court of Lewis rendered March 8, 1877, the tenants, the heirs of James M. Camp, obtained a writ of error and *supersedeas.*

*J. M. Bennett* for plaintiffs in error.

*John Brannon* for defendants in error.

GREEN, JUDGE:

This will probably be the last, as it is the only, case of a writ of right, which has ever come before this Court. The writ of right has been abolished as a remedy in Virginia since July 1, 1850. (Code of Virginia of 1849, ch. 136, sec. 38; Code of Virginia, of 1860, p. 613.) And as a remedy the writ of right never has existed in West Virginia. (Code of West Va., ch. 91, sec. 38.) So that no writ of right can come before our Court, unless the action was brought prior to July 1, 1850, that is, unless the action has been pending more than thirty-five years. And despite the great delays, which sometimes occur in the prosecution of suits, it rarely happens that a suit is pending that length of time. This suit has however been pending more than thirty-eight years, there having been during all this time but little done in it except to continue it in the circuit court from term to term. The principal question discussed in this Court by counsel is, whether, if pending an action of a writ of right the demandant convey by deed the tenement, the subject of controversy, to a third party, he can in any case have a judgment in his favor against the tenant.

It is well settled, that as the law was, when this action was brought, if it had been an action of ejectment, the plaintiff could not recover, if pending the action he by deed conveyed away the premises to a third party, though this is no longer law, it having been changed by the statute since the institution of this suit. (*Johnston* v. *Jarrett*, 14 W. Va. 237 and *Johnston* v. *Griswold & Rogers*, 8 W. Va. 240.) It is earnestly insisted by the counsel for the defendants in error, the demandants below, that this never was the law in writs of right, but that the demandant in a writ of right could recover, if he showed the better title, when this action was instituted, though pending the action he conveyed the tenement demanded to a third person. And this is the enquiry which would have arisen in this action, if the tenants had moved for a new trial, and when the court below overruled their motion, they had either filed a bill of exceptions or else simply objected and had this objection noted of record. In this case the court refused to permit the tenants to prove, that pending the action the demandants had conveyed this tenement the subject

of controversy by deed, and the tenants excepted to this action of the court and had their exceptions noted on the record. If the court below erred in this, and the tenants had asked a new trial on the ground of this error, they would have been entitled to such new trial; and if it had been refused, and the record showed that they either excepted or objected to this refusal, this Court would have considered this question, and if we had concluded the court below erred, we would have reversed the judgment and awarded such new trial. But as no new trial was asked, this Court can not review this question and award a new trial never asked of the court below, as we have repeatedly decided. (*Danks* v. *Rodeheaver, supra*.)

This question thus elaborately discussed can not be considered by us, as no new trial was asked by the tenants in the court below. And for precisely the same reason we can not review the question, whether the court below erred in permitting the demandants pending the trial before the jury to introduce George Fisher into the case to stand as the next friend of certain infant demandants and prosecute this suit for them. We therefore decline to express any opinion as to the action of the court below on these points; no new trial having been asked on this account, on the authorities above cited we can not consider the question whether the court below did or did not err in this matter. I would however refer to *Syme* v. *Jude*, 3 Call 522 as throwing some light on the power of a court independent of statute-law to permit an amendment of the record, after the jury has been sworn.

The only other error claimed to exist in this case is, that the court below erred in rendering judgment against all the defendants, when two of them in March, 1877, disclaimed on the record any interest in the tenement the subject of controversy. This disclaimer was by a simple entry to that effect on the record-book, which the counsel for the defendant in error argues was insufficient, as such disclaimer should have been by deed or by plea of disclaimer. In *Bryan* v *Hyre et al.*, 1 Rob. 94, it was decided, that in an action to recover a freehold estate in land, if the defendant relies on a disclaimer of any interest in the land in controversy, such disclaimer can not be shown by parol proof but must be shown

by a deed of the defendant, unless it be made of record.  As I understand this, if such disclaimer is not by deed, it must appear of record in the suit, in which such freehold in the land is claimed.  How it must be made to appear of record is not decided, nor is it intimated in the case in 1 Rob.  But to me it seems clear, that if all the defendants disclaim, it is unimportant, whether such disclaimer is made to appear of record by a formal plea of disclaimer or by a simple entry on the record-book, that the defendants disclaim any interest in or claim to the land in controversy.  The reasoning of the court in *Bryan* v. *Hyre* to show that a parol disclaimer would be insufficient is as well met by such a disclaimer entered on the record-book as a part of the proceedings in the case, as it would be by a formal plea of disclaimer filed by the defendants.  And if some of the defendants disclaim as in this case, the proper mode of so doing would be by a simple entry of record of their disclaimer, as was done in this case, and not by a plea of disclaimer by a part only of the defendants.  If the plea of not guilty has been put in as in this case, the court ought to permit all the defendants to withdraw it and put in a plea of disclaimer or abandon their defence by a simple entry of disclaimer by all the defendants of record.  But if all the defendants do not choose to withdraw their plea of not guilty and to disclaim, a part of them ought not to be allowed to do so, as a simple entry of disclaimer by them on the record-book will stop all costs against them after the entry of such disclaimer, which is all that they are in such case entitled to; and as full justice is done them by such simple entry of disclaimer on their part on the record-book, there is no reason why the court should permit the withdrawal of the plea of not guilty, which has to be tried, as some of the defendants rely upon it and decline to withdraw it.

There was therefore no error in the manner in which James H. Camp and Martin P. Camp disclaimed any interest in the land in the controversy in this case.  By their simple entry on the record-book, that "they appeared in court and disclaimed any interest in the land in controversy in this case," they abandoned the defence their ancestor had made, and thereafter they ought not to be rendered liable for costs subsequently accrued in the case by the controversy being con-

tinued by their co-defendants. But as their ancestor had carried on the controversy for nearly thirty years before this disclaimer, they, in case the demandants recovered, ought to be liable for the costs incurred during these thirty years of controversy; just as James M. Camp the original tenant would have been, had he lived to the time this disclaimer was made and had then appeared and withdrawn his defence by a plea of disclaimer. It may be, that James M. Camp and Martin P. Camp might have by a proper course escaped the payment of any costs in this case by appearing to the *scire facias* to revive the case against them and asking the court not to revive the case against them or make them defendants in the case. This request I suppose would have been granted only upon their executing to their co-heirs, who proposed to continue the controversy, a release or conveyance in fee not simply of their interest in this tract of land in controversy but of all their interest in the estate of their ancestor. For such a release would put them in the same position, as if they never had been heirs, and would thus, it seems to me, show cause why the case should not be proceeded with against them as defendants, and would be as good an answer to the *scire facias* as the showing that they never were heirs would have been.

For these reasons, I am of opinion, that the circuit court of Lewis county erred in its judgment entered on March 8, 1877, in that portion of its judgment only which is in the following words: "And also that the said demandants recover against the said defendants their damages assessed as aforesaid, and their costs in this behalf expended;" and that in lieu thereof the circuit court should have inserted the following words in its judgment : "And also that the said demandants recover against the defendants their damages aforesaid and their costs in this behalf expended prior to March 1, 1875; and that the said demandants further recover against all the defendants other than James H. Camp and Martin P. Camp their costs in this behalf expended since March 1, 1875." There is no other error in said judgment, as it was properly rendered against all the defendants, and a writ to cause them to have seizin of said land was properly granted against all the defendants. The error we have pointed out in said

judgment is not one for which it can be reversed, as it is error only to a small part of the costs in the case. This Court can not reverse a judgment or decree for error in the awarding of costs only; but in such case it will correct the judgment or decree in this respect and then affirm it.

The judgment of the court below must therefore be corrected in this respect and must then be affirmed; and the defendants in error must recover of the plaintiffs in error their costs in this Court expended and $30.00 damages.

CORRECTED AND AFFIRMED.